UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID W. FOLEY, DC #E-477101,

    Plaintiff,

v.                                                                            CASE NO: 8:10–cv-2085-T-26EAJ

DEPUTY MARSHALL DEBERRY,
DEPUTY MARK HAINES,
DEPUTY ERICA POOLE,
DEPUTY JENNIFER ROBERGE,

    Defendants.
_____/

## **O R D E R**

Before the Court is Defendants' Motion for Summary Judgment with attachments, affidavits and depositions (Dkts. 47, 48, 49 & 52), and Plaintiff's Verified Legal Memorandum in Opposition. (Dkt. 56). After careful consideration of the motion, the applicable law, the parties' submissions, and the entire file, the Court concludes that the motion should be granted.

### BACKGROUND

Plaintiff David W. Foley brings this action pursuant to 42 U.S.C. § 1983 action for use of excessive force[1] against four deputy sheriffs of Pasco County, Florida. The claim

---

[1] In his response to Defendants' motion to dismiss filed earlier in this case, Plaintiff conceded he is seeking only excessive force in his arrest. See docket 33, Order denying motion to dismiss at footnote 1 ("Plaintiff concedes he is not seeking a claim for

stems from the conduct of the arrest of Foley on December 9, 2007, when the deputies were dispatched to a residence in Holiday, Florida, in response to three different 9-1-1 calls regarding an apparent domestic quarrel. At 9:12 p.m., the first call came from Sharon Denton, Plaintiff's girlfriend, who reported that Plaintiff refused to relinquish her car keys. Plaintiff's mother, Bettye Davis, made the second call to report that both Plaintiff and Denton were inebriated and that Denton had committed a simple battery on Plaintiff. Plaintiff made the third call at 9:26 p.m., and according to the FDLE investigative report,[2] Plaintiff said, "there is a big fight—and it's going to be a murder suicide." Plaintiff also told the 9-1-1 operator that he had a 9mm handgun and that "[i]t's not going to turn out good tonight."

The deputies arrived at the scene around 9:29 p.m. with their weapons drawn. The deputies saw one of Plaintiff's hands behind his back perhaps shielding something from view. Plaintiff refused to drop the object, which was later discovered to be a pronged barbeque-style fork. When Plaintiff continued to refuse to drop the object, which one of the deputies reported was a knife, Deputy Roberge first holstered her weapon and then drew and fired her taser at Plaintiff. When Deputy Poole saw Deputy Roberge's taser attempt had failed, she attempted to hit Plaintiff with her taser. After this second attempt failed, Deputies DeBerry and Haines were startled by Plaintiff moving backwards with

---

false arrest and false imprisonment. [citations omitted]").

[2] The Florida Department of Law Enforcement (FDLE) conducts an independent investigation when they receive notification of an officer involved shooting. (Dkt. 47-1).

the object raised in his hand above his shoulder. Deputies DeBerry and Haines then shot Plaintiff with their respective guns when Plaintiff started moving toward them with the raised serving fork. Two shots entered Plaintiff, one in his lower chest and one in his abdomen and left hip. Plaintiff was transported to Tampa General Hospital where surgery was performed on the gunshot wounds.

Plaintiff was subsequently charged by criminal information with four counts of aggravated assault on a law enforcement officer. (Dkt. 47-12). Each count named one of the four deputies, with the first count naming Deputy Erica Poole, the second Deputy Mark Haines, the third Deputy Marshall DeBerry, and the fourth Deputy Jennifer Roberge. (Dkt. 47-12). Plaintiff pleaded guilty on February 11, 2009, to obstructing or opposing an officer without violence on counts one and two, first degree misdemeanors, and to aggravated assault on a law enforcement officer on counts three and four, second degree felonies. (Dkt. 47-12).

Defendants argue in this motion that Plaintiff's claim is barred by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), and that even assuming it is not barred by Heck, the four deputies are entitled to qualified immunity.

*Deputies' Version of the Facts*

The deputies' version of the facts formed the basis of the FDLE investigative report summarized above. The deputies had been told by dispatch that there was a fight in progress and that Plaintiff and his girlfriend were drunk. There was a crowd gathered

when the deputies arrived on the scene, and several of the on-lookers stated that Plaintiff had a gun. All four deputies averred that they first saw Plaintiff carrying something behind his back that he refused to put down. The deputies averred that Plaintiff taunted them by saying, "Go ahead. Shoot me. I don't care. Oh, you're not gonna shoot me." When he revealed the object, Deputies Roberge and Poole thought he had a knife. Instead of a knife, Plaintiff was concealing a twelve to fourteen inch, two-pronged barbeque serving fork. Plaintiff stepped back and placed the fork in a stabbing position and Officer Roberge deployed her taser at him. Only one barb stuck in Plaintiff's chest, and he ripped it out while stating, "[t]hat doesn't hurt. It's not gonna stop me." When it was unsuccessful, Officer Poole deployed her taser, which was also unsuccessful.

After the two tases were unsuccessful, Plaintiff continued to carry the fork in a "ready" position in front of him. Plaintiff was again ordered to drop his weapon. When he refused and started moving toward Deputies Haines and DeBerry, they shot him with their firearms.

*Plaintiff's Version of the Facts*

Plaintiff admitted that he called 9-1-1 and asked them to send a few deputies because the situation was getting out of control. Before he was shot, Plaintiff claims that he heard Deputies Poole and Roberge asking him to put the gun down. Plaintiff, however, does not remember whether he had anything in his hand, but he knows he did not have a firearm. Plaintiff then heard one of the female deputies clarify that he did not

have a gun but rather a shiny object. At that point, he saw a female officer draw her taser and strike him in the chest. Contrary to the four deputies, Plaintiff testified that the first taser shot was successful and he stood rigid. The second taser hit much later, about fifteen minutes later. He testified that both taser shots were good hits, leaving him immobile. He also remembers a long period of time between the two gun shots—fifteen minutes. Plaintiff, however, believes there were three gunshots that wounded him, because he has three gunshot wounds.[3] Plaintiff testified that he never threatened any of the deputies with a weapon. Plaintiff contends that the deputies could have used a billy club to subdue him, if necessary, because he was not carrying a firearm or a knife, but a barbeque fork.

## STANDARD FOR SUMMARY JUDGMENT

This case involves summary judgment decisions on two issues: the Heck bar and qualified immunity, if that issue is reached. In deciding a motion for summary judgment, particularly on the issue of qualified immunity, this Court must resolve all issues of material fact in favor of the plaintiff. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002). Although the "facts, as accepted at the summary judgment state of the proceedings, may not be the actual facts of the case[,]" for summary judgment purposes, all reasonable inferences from the facts are to drawn in favor of the plaintiff." Id. at 1190

---

[3] The Pasco County Fire Rescue identified three gunshot wounds, which included one exit wound from one of the two bullets. Only two cartridge casings were recovered at the scene. (Dkt. 47-15 at Exhs. 5 & 6).

(quoting Priester v. City of Riviera Beach, 208 F.3d 919, 925 n. 3 (11th Cir. 2000)). "Summary judgment is appropriate if 'the evidence before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" McCullough v. Antolini, 559 F.2d 1201, 1204 (11th Cir. 2009).

## EXCESSIVE FORCE

The use of excessive force during an arrest must be analyzed under the authority of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006). In resolving excessive force cases in situations where the plaintiff was convicted in state court of a crime associated with the arrest, as in this case, a determination must be made whether the plaintiff should be barred from bringing the § 1983 case because a judgment in the plaintiff's favor may cast doubt on the validity of the conviction.

## HECK V. HUMPHREY

Under Heck v. Humphrey, an action filed pursuant to 42 U.S.C. § 1983 must be dismissed if a judgment in the plaintiff's favor on the § 1983 case would necessarily imply the invalidity of his conviction and sentence. The reasoning underlying the rule is that habeas corpus is the exclusive vehicle by which a state prisoner's conviction must be challenged. Heck, 512 U.S. at 481, 114 S.Ct. at 2369. Thus, the prisoner must demonstrate that the conviction and sentence have been set aside and invalidated before his § 1983 claim may be heard. Heck, 512 U.S. at 489, 114 S.Ct. at 2373 (holding that no

cause of action exists under § 1983 "unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.").

To determine whether the Heck bar applies, "a successful § 1983 suit and the underlying conviction [must] be logically contradictory." Dyer v. Lee, 488 F.3d 876, 884 (11th Cir. 2007). The crimes for which Plaintiff pleaded guilty were aggravated assault on a law enforcement officer. The elements that he admitted in pleading guilty are the following: (1) he made an intentional, unlawful threat by word or act to do violence to another person; (2) he had the apparent ability to do violence; (3) he did some act that created a well-founded fear that such commission of violence was imminent; (4) he committed the assault with a deadly weapon; (5) the victim was a law enforcement officer; and (6) the law enforcement officer was engaged in the lawful performance of his or her duties. Sullivan v. State, 898 So.2d 105, 108 (Fla.Dist.Ct.App. 2005). Yet, in this action, Plaintiff alleges and avers that he did not commit aggravated assault with a deadly weapon. Specifically, Plaintiff avers that he, at the very least, does not remember what, if anything, he was carrying in his hand, and in the alternative, he was carrying only a barbeque serving fork, which is not a deadly weapon. Having already pleaded guilty to the antithesis of these facts, logically, Plaintiff cannot bring his claim for excessive force while his convictions of aggravated assault related to the same events remain, because the convictions establish that he threatened the deputies. See Hainze v. Richards, 207 F.3d

795, 798-99 (5th Cir. 2000) (citing Sappington v. Bartee, 195 F.3d 234 (5th Cir. 1999)).[4] The force used by the deputies to restrain Plaintiff, the tasing and shooting, cannot be deemed excessive, because they could use up to and including deadly force in response to aggravated assault with a deadly weapon. Thus, this claim is necessarily inconsistent with his convictions and the convictions have not been overturned. Heck bars this action.

## QUALIFIED IMMUNITY

Assuming, on the other hand, that the Heck bar does not apply to this action, the Court would have to determine whether the deputies are entitled to qualified immunity. First, there is no question that all four deputies were acting within the scope of their discretionary authority. See Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009). Thus, the Plaintiff must show that a constitutional right was violated and that the illegality of the deputies' actions was "clearly established." Oliver, 586 F.3d at 905. These questions need not be answered in any particular order. Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

The use of excessive or unreasonable force in making an arrest constitutes a violation of the Fourth Amendment. See Davis v. Williams, 451 F.3d 759, 767 (11th Cir. 2006). An objective test is used to determine whether excessive or unreasonable force has been used. Priester v. City of Riviera Beach, Fla., 208 F.3d 919, 924 (11th Cir. 2000).

---

[4] In another case, a judge in this District held that a conviction of resisting an officer with violence created a Heck bar to a § 1983 claim for excessive force. Bursey v. Ameigh, No. 6:08-cv-744-Orl-35DAB, 2010 WL 3119389 (M.D. Fla. Aug. 4, 2010).

The Graham[5] factors[6] should be considered in determining whether the totality of circumstances show that "the manner of arrest was reasonable." Draper v. Reynolds, 369 F.3d 1270, 1277 (11th Cir. 2004).

For purposes of summary judgment on qualified immunity, the Plaintiff's version of the facts must be considered as true. According to Plaintiff, he either did not remember holding anything in his hand or he was perhaps holding a barbeque serving fork.[7] He maintains that he did not respond to the deputies' requests to lay down his weapon because he did not have a weapon in his hand. Plaintiff claims, contrary to all other evidence, that both tasers were effective, although he admits that he was still standing after the first taser shot.[8] Plaintiff does not know which female deputy tased him first. Plaintiff avers that after he was shot with the two tasers, he was shot three times by guns.

---

[5] Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443 (1989).

[6] The three Graham factors to be applied in considering the reasonableness of the force used in excessive or unreasonable force cases are as follows: (1) "the severity of the crime at issue;[ (2)] whether the suspect poses an immediate threat to the safety of the officers or others[; and (3)] whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396, 109 S.Ct. at 1872.

[7] While he testified at his deposition that he did not remember carrying anything in his hand, see docket 49 at page 31, in his sworn response, Plaintiff avers that "[i]t was a short barbeque fork that a billy club standard accessory for officers, could have been used to free from [Plaintiff's] hand." See docket 56 at p. 5, para. 7.

[8] See docket 49 at p. 35.

**Taser Shots**

With respect to the two taser deployments, Plaintiff claims that fifteen minutes passed between the two shots. The record unequivocally reveals, however, that no more than five or so minutes transpired for the entire event, from arriving on the scene at 9:29 to Plaintiff's receipt of gun fire at 9:34. Even assuming the first taser was effective, as Plaintiff claims, he admitted that he remained standing while he was tased a second time. The record also shows that the deputies responded to 9-1-1 calls informing them that there was a fight in progress and Plaintiff was armed with a 9 mm gun. When they arrived on the scene, a crowd was watching and individuals in the crowd told them that Plaintiff was armed. It is against this backdrop that whether a constitutional violation occurred and what was "clearly established law" at the time of the incident in December 2007, must be determined.

*Clearly Established Law*

The Court finds that the deputies were acting within the limits of the clearly established law at the time of the incident in December 2007. The Eleventh Circuit has permitted officers to use tasers in situations where the suspect was not armed, not attempting to flee, and no violence had been reported. See Draper v. Reynolds, 369 F.3d 1270 (11th Cir. 2004). The Eleventh Circuit has held that despite an officer's use of a taser three times to subdue a suspect, qualified immunity must be granted because the law was not clearly established at the time that the use of a taser three times constituted

excessive force. Floyd v. Corder, 2011 WL 1834249, at *2 (11th Cir. May 12, 2011) (unpublished).[9] As in Floyd, the Plaintiff cannot show that on the day of the tasing, it was "clearly established" that such force was excessive. The law as of December 2007 did not place the female deputies on notice that tasing Plaintiff was excessive force. In the circumstances surrounding the event, the 9-1-1 calls, the crowd, the shouts that Plaintiff had a weapon, none of which are disputed by Plaintiff, and the totality of the circumstances demonstrate that the female deputies' use of force did not violate clearly established law.

*Constitutional Violation*

As in Draper, the Plaintiff asserts that the two female deputies used excessive force in his arrest by discharging their taser guns at him. The circumstances of this case involve the "tense, uncertain, and rapidly evolving" events that Graham acknowledged face law enforcement officers. A crowd was gathered at the scene with various shouts that the Plaintiff was holding a weapon. A fight between Plaintiff and Denton had precipitated the 9-1-1 calls and the gathering of individuals to ascertain the magnitude of the domestic quarrel. Plaintiff was retreating when the officers repeatedly asked Plaintiff

---

 [9] The Eleventh Circuit has most recently issued an opinion in which Draper is distinguished on the basis that under the version of the facts most favorable to the plaintiff, the plaintiff was not violent, did not disobey orders, did not resist arrest, and did not pose any risk to the officers or others. Fils v. City of Aventura, —F.3d —, 2011 WL 3241618, at *14 (11th Cir. Jul. 28, 2011). The facts of Fils are distinguishable from the instant case in that here, Plaintiff admits that the crowd was yelling and screaming that Plaintiff had a gun, and that the scene was in a state of chaos.

to drop his weapon, none of them could see that he tried to comply, and in fact, all saw an object in his hand that he had been trying to hide. Notably, Plaintiff never claims that he was not holding a shiny object, only that he does not remember if he was holding anything. Plaintiff also admits that he did not keep his hands at his side but kept moving them in front of and behind him.[10] Contrary to Plaintiff's assertion that a billy club could have removed any object from his hand, a billy club could have caused physical damage to Plaintiff and created a much more unsafe position for the deputies, having to move closer to Plaintiff in view of an unknown weapon in hand, conceivably a knife. Hence, the use of the taser gun at a distance of ten to fifteen feet is reasonably proportionate to effectuate an arrest in the tense and uncertain atmosphere at the scene that day in December.

    The first taser shot did not take down, or seem to effect, Plaintiff, as he admitted that he continued to stand after being the tased the first time. Thus, the use of the second taser was also proportionate to the arrest because it did not appear to the officers or anyone else that the first taser had successfully stopped him. Moreover, the Plaintiff claims no injury resulting from the tasers other than the pain of the taser shocking him. Accordingly, were the Heck bar not to apply, the Court would grant qualified immunity to the two female officers.

## Gunshots

---

[10] See docket 49 at p. 28.

After Plaintiff was tased, the two male officers fired their guns at Plaintiff. Plaintiff testified that he remained standing after he was tased a second time.[11] The reasonableness of Deputies Haines and DeBerry's use of lethal force must be considered in light of the following three factors: (1) the severity of the crime; (2) whether Plaintiff posed an immediate threat to the officers or others; and (3) whether Plaintiff actively resisted arrest. Penley v. Eslinger, 605 F.3d 843, 850-51 (11th Cir. 2010).

### *Constitutional Violation*

In considering whether the force of shooting the two guns was reasonable, the Plaintiff's version of the facts prevail. As discussed above, Plaintiff could not remember whether he was holding an object, but never denied that he was holding a short barbeque serving fork. It is clear from the deputies' testimony that they saw something in his hand and had asked him to put it down numerous times. The deputies knew that a fight was occurring at the scene and a large crowd was gathered. Some individuals shouted to the deputies that Plaintiff had a gun. Although Plaintiff testified that he did not have a gun in his hand, he could not remember whether he had something else in his hand. He testified that he was moving his hands in front and behind him. Thus, even from Plaintiff's testimony, it appears that Plaintiff was not complying with the deputies' demands.

On balance, if the Heck bar did not apply, the Court finds that excessive force was not used based on the totality of the circumstances and the split-second decision that the

---

[11] See docket 49 at pp. 36-37.

deputies had to make.  Even though Plaintiff claims that both taser shots stunned him, he admits that he was still standing in the same position after each shot.  The two deputies who saw him tased and then shot him with their guns, seconds apart, saw that Plaintiff was not taken down by the tasers.  They had seen Plaintiff moving his arms, as he admits that he was doing.  When faced with a situation where the deputies as well as on-lookers could be injured had Plaintiff used a weapon in his hand, the deputies acted reasonably in shooting their guns to stop the Plaintiff.

*Clearly Established Law*

A review of the law at the time of the incident does not reveal a case with materially similar facts such that the deputies would have been put on notice that their actions in shooting Plaintiff violated clearly established law.  The deputies were justified in continuing to use the same force until the suspect was fully secured.  See Jean-Baptiste v. Gutierrez, 627 F.3d 816, 822 (11th Cir. 2010).  Accordingly, were the Heck bar inapplicable, the deputies would be entitled to qualified immunity.

It is therefore **ORDERED AND ADJUDGED** as follows:

(1)     Defendants' Motion for Summary Judgment (Dkt. 47) is **GRANTED.**

(2)     The clerk shall enter judgment for the Defendants and against Plaintiff.

(3)     The clerk is directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, on August 11, 2011.

        s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record
Plaintiff, *pro se*